IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIMOTHY JAVON JOHNSON, § | | |
| INDIVIDUALLY AND D/B/A THE THREE § | | |
| WISE MEN A/K/A THREE WISEMEN, § | | |
| § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | CIVIL ACTION NO. _____ | |
| § | | |
| VENDETTA FILMWORKS, LLC. a/k/a § | | |
| VENDETTA FILM WORKS, INC., § | | |
| DEMOLITION PICTURES, LLC , § | | |
| JOHN EWING III, MARIE HEGWOOD, § | | |
| EDMUND T. ALSTON, KYM WHITLEY, § | | |
| AND NEEMA BARNETTE, § | | |
| § | | |
| *Defendants.* § | JURY TRIAL DEMANDED | |

**ORIGINAL COMPLAINT FOR**
**DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Timothy Javon Johnson, individually and d/b/a The Three Wise Men a/k/a Three Wisemen,[1] files this Complaint, and would respectfully show as follows:

**INTRODUCTION**

1. This is a civil action seeking redress for Defendants' copyright infringement in violation of the United States copyright laws of Plaintiff's copyright in Plaintiff's original stageplay, *Ain't Nobody Called Me And Told Me Nothin,'* and all derivative works, including *Heaven Ain't Hard to Find.* Plaintiff also brings an ancillary state law claim for fraud.

---

[1] The Three Wise Men was comprised of Timothy Javon Johnson ("Johnson"); Norris Burse a/k/a Norris Muhammad ("Burse"), who was a resident of in Houston, Texas until his death on or about January 22, 2010; and John Eugene Trusty a/k/a Eugene McDaniel ("Trusty"), who was a resident of Houston, Texas but died in Oklahoma City, Oklahoma on or about May 5, 2011. Johnson is authorized to bring this lawsuit on behalf of The Three Wise Men a/k/a Three Wisemen ("The Three Wise Men").

## JURISDICTION

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338 because this action, in part, is an action for copyright infringement under the provisions of the Federal Copyright Act, 17 U.S.C. §§101 *et seq*. ("Copyright Act").  This Court has jurisdiction over the Texas state law claims under principles of pendent and ancillary jurisdiction.

## VENUE

3. The Southern District of Texas is the appropriate venue for this case under 28 U.S.C. §§ 1331 and 1338 because this is an action for copyright infringement under the provisions of the Federal Copyright Act, 17 U.S.C. §§ 101 et seq. ("Copyright Act").

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391and 1400(a).

5. Defendants, directly or through intermediaries, make, distribute, offer for sale or license, sell or license, and advertise their products and services in the State of Texas, and in this jurisdiction.  At all relevant times, two of The Three Wise Men, Burse and Trusty, were residents of Houston, Texas.  The Protected Work (described below) was written, in significant part, in Houston, Texas.  Defendant Vendetta negotiated and contracted with The Three Wise Men in Houston, Texas for a limited license of the Protected Work, which is how Defendants obtained access to the Protected Work.

## PARTIES

6. Plaintiff Timothy Javon Johnson ("Johnson") is an individual who resides in South Carolina, and who has done business individually and as part of The Three Wise Men in Houston, Texas.

7. Defendant Vendetta Filmworks, LLC d/b/a Vendetta Film Works, Inc. ("Vendetta") is a South Carolina limited liability company, which may be served with process by serving its registered agent, Francis H. Clabaugh, at 111 Executive Center, Hilton Head, South

Carolina 29938, and by serving its President and CEO, John Ewing III, at 168 Usha Court, Orangeburg, South Carolina 29115, or wherever he may be found.

8.      Defendant Demolition Pictures, L.L.C. ("Demolition") is a California limited liability company, which may be served with this lawsuit by serving its registered agent for service, Lisa Servantes, at 1039 26th St., Santa Monica, California, 90403, and by serving its Manager, Marie Hegwood, at 2600 West Olive Ave., 5th Floor, Burbank, California 91505, or wherever she may be found.

9.      Defendant John Ewing III ("Ewing") is, upon information and belief, an individual who resides in South Carolina.  He is the President and CEO of Vendetta Filmworks, LLC a/k/a Vendetta Film Works, Inc., and may be served with this lawsuit at his work address at Vendetta Filmworks, LLC a/k/a Vendetta Film Works, Inc., 168 Usha Court, Orangeburg, South Carolina 29115, or wherever he may be found.

10.     Defendant Marie Hegwood ("Hegwood") is, upon information and belief, an individual who resides in California.  She is an Executive Producer at Defendant Demolition Pictures, and may be served with this lawsuit at her work address at Demolition Pictures, L.L.C., 2600 West Olive Ave., 5th Floor, Burbank, California 91505, or wherever she may be found.

11.     Defendant Edmund T. Alston ("Alston") is, upon information and belief, an individual who resides in South Carolina.  Upon information and belief, he is a Co-Executive Producer at Vendetta, and may be served with this lawsuit at his work address at Vendetta Filmworks, LLC a/k/a Vendetta Film Works, Inc., 168 Usha Court, Orangeburg, South Carolina 29115, or at his residence address, 331 5th Ave., Mount Pleasant, South Carolina 29564, or wherever he may be found.

12. Defendant Kym Whitley ("Whitley") is, upon information and belief, an individual who resides in California. Upon information and belief, she is a Co-Executive Producer at Demolition, and may be served with this lawsuit at her work address at Demolition Pictures, L.L.C., 2600 West Olive Ave., 5th Floor, Burbank, California 91505, or at her residence, 5230 Babcock Ave., Valley Village, California 91607, or at her agent's address, 1505 10th Street, Santa Monica, California 90401, or wherever she may be found.

13. Defendant Neema Barnette ("Barnette") is, upon information and belief, an individual who resides in California. She is a film director at Defendant Demolition Pictures, and can be served with this lawsuit at her work address at Demolition Pictures, L.L.C., 2600 West Olive Ave., 5th Floor, Burbank, California 91505. She is also an adjunct professor at UCLA and can be served with this lawsuit at her work address at UCLA, 102 E. Melnitz, Los Angeles, California 90095, or wherever she may be found.

## BACKGROUND

### A. The Protected Work

14. In or about 2008, Johnson, Burse, and Trusty created the original stageplay entitled *Ain't Nobody Called Me and Told Me Nothin'* (the "Protected Work"). Johnson, Burse, and Trusty conceived of and wholly authored the Protected Work. Johnson registered the Protected Work with the U.S. Copyright Office on July 27, 2008, registration no. Pau003355061.

### B. Defendants' Infringement of the Protected Work

15. In the fall of 2008, Hegwood, a Demolition producer, read the Protected Work, which was written by Johnson, Burse, and Trusty and copyrighted by Johnson, along with another stageplay titled *Don't Say Goodnight*. On or about October 15, 2008, Hegwood initiated negotiations with Johnson, Burse, and Trusty (hereinafter referred to as "The Three Wise Men")

concerning the Protected Work, which she told The Three Wise Men she wanted to produce as a stage performance (the "Play").[2] Hegwood advised The Three Wise Men that she wanted to get television director Barnette to direct the Play. Hegwood touted Barnette as being well-known in the industry, and represented that a talent base of well known film and television actors would come with Barnette, which would bring great visibility to the project. Hegwood advised The Three Wise Men that time was of the essence, and that she wanted to move forward quickly so that the Play would be ready to perform before a live audience in Aiken, South Carolina by February 7, 2009. The Play was to be filmed for DVD distribution, and The Three Wise Men would receive a percentage of the box office at the five stage performances of the Play, along with a percentage of the DVD sales of the recorded live performance of the Play. Hegwood told The Three Wise Men that the financing partner, who, upon information and belief is Ewing, had a direct relationship with Wal-Mart, which would be a retail market for the DVD sales. Hegwood also represented that having the live performance of the Play recorded on DVD would enable the Play to actually tour nationwide, which would provide a stream of royalties to The Three Wise Men that would be "evergreen" and continue beyond a national tour schedule.

16. During the negotiations over a license agreement for the Protected Work to be made into the Play, Hegwood often demonstrated that she was more familiar with movie scripts rather than stageplays. Accordingly, there were numerous times that The Three Wise Men reminded Hegwood that the Protected Work was a "play script" and not a feature film script, and that Defendants were only buying a "play script."

---

[2] Upon information and belief, at all relevant times, Hegwood was working for or on behalf of herself, Demolition, Vendetta, and Ewing. She was a producer for Demolition, and included the Demolition name on all of her email communications with The Three Wise Men. She referred to Ewing, the President and CFO of Vendetta, as her "investor".

17. On or about December 1, 2008, Vendetta entered into a Musical Play Performance License Agreement ("Agreement") with The Three Wise Men, which provided Vendetta a limited non-exclusive license to produce, perform, and record the Play, based on the script written by the Three Wise Men (i.e., the Protected Work), for a total of five (5) performances. Ewing signed the Agreement as the President/CEO of Vendetta. In the Agreement, The Three Wise Men granted Vendetta an exclusive license to videotape, produce, and distribute the performance of the Play via digital videodisc (DVD) for a term of ten (10) years. This is the only license to the Protected Work that Plaintiff has provided.

18. During the first week of December 2008, Johnson sent Defendants a "final" version of the Play. On December 7, 2008, Hegwood and Ewing advised The Three Wise Men that they wanted a new title for the Play, and they wanted to change the names of two of the characters in the Play, Sister Bernice and Lil Darryl. Hegwood then asked The Three Wise Men to change the name of the prison guard "to something easy", and to change Kemuel's name, because she did not want the actors to say the name wrong on stage. Hegwood advised The Three Wise Men that they could keep the names how they wanted them for the stageplay that they would travel with, but for the live performance that would be recorded to DVD, which she, Demolition, Vendetta, Ewing, Alston, and Whitley were producing, and which Barnette was to direct, she wanted names that would be easy to pronounce. The Three Wise Men provided Hegwood and Ewing with a list of new titles for the Play, and proposed name changes for the characters. Hegwood advised The Three Wise Men on December 14, 2008 that, from the selections provided by The Three Wise Men, she and Ewing had selected *Heaven Ain't Hard to Find* as the new title for the Play, and that they had selected the following character name changes: Lil Darryl would be changed to Lil Bobby, and Kemuel would be changed to Malcolm.

Shortly thereafter the character name for Sister Bernice was changed to Sister Thelma Winbush, and the character name for Sister Coretta was changed to Sister Betty Brown.

19. From the beginning, it was understood and agreed that the Play would be performed before a live audience in Aiken, South Carolina ("Aiken"). During the latter part of December 2008, Defendants requested that The Three Wise Men rewrite portions of the Play; however, the only rewrites Defendants requested at that time involved the insertion of slug lines that would turn the Play into a screenplay, which was not allowed under the Agreement. In a December 31, 2008 email to Hegwood, Johnson reminded her that the script she was producing was a stageplay, not a script for a film, and that stage and film are two different worlds. In accordance with the Agreement, The Three Wise Men turned over to Defendants a properly formatted stageplay, and understood it would be produced before a live audience in Aiken in February, 2009.

20. In early January 2009, The Three Wise Men obtained flyers and/or other printed advertising for the performance of the Play in Aiken, which was to be on Saturday, February 7, 2009 at the USC Aiken Convocation Center, staring Clifton Powell and Samantha McSwain and directed by Barnette. When The Three Wise Men noticed that their name and/or logo were not on this printed advertising they notified Hegwood, who advised them that Ewing was busy working on the actual production of the Play and that the failure to include The Three Wise Men logo was a simple omission on a local flyer.

21. In January 2009, when they asked about travel arrangements for the performance of the Play in Aiken, The Three Wise Men were advised by Hegwood that the live performances in Aiken were cancelled due to a death in Ewing's family. Hearing nothing further, The Three Wise Men contacted Defendants in early February 2009, at which time they (a) inquired whether

any rewrites were needed before the start of rehearsals of the Play, (b) asked about the new dates for the performances of the Play in Aiken, and (c) asked about travel arrangements concerning when they would be flown to Aiken to see the performances. Johnson also attempted to learn the location and schedule of rehearsals for the stage production of the Play. Hegwood advised that they were in Los Angeles for two weeks while Barnette worked on the schedule. Although requested to do so on several occasions, Defendants refused to provide a rehearsal schedule to Johnson or to provide information concerning where and when the live performances of the Play would be held.

22.     After many attempts to obtain the rehearsal schedule for the Play from Defendants and ascertain where the Play would be performed on stage, on or about March 4, 2009, Johnson learned from a crew member that the Play was being shot at a location in Los Angeles by Defendants as a movie, rather than as a stageplay production, with Barnette as the director, Ewing as the Executive Producer, Hegwood as the Producer, and Alston and Whitley as Co-Executive Producers, and staring Clifton Powell and Samantha McSwain, the same actors who had been scheduled to perform in the Aiken stage production of the Play. To add insult to injury, the Call Sheet for Day 5 of 8, dated March 5, 2009, listed the Writer as "3 Blind Men", which clearly is not the correct name of The Three Wise Men and, upon information and belief, was a defamatory and ridiculing statement that was intended to cause injury to The Three Wise Men.

23.     Defendants did not have a license agreement (a) to rewrite the Protected Work as a movie script,[3] (b) to film the Protected Work as a movie or (c) to produce, distribute, market, and/or sell DVDs of a movie made of the Protected Work. Defendants have distributed and/or

---

[3] Upon information and belief, Barnette and others at the direction of Defendants modified the final script of *Heaven Ain't Hard to Find* to make it more adaptable as a film script rather than a stageplay.

sold DVDs of the movie made of the Protected Work to the following, which have used, shown or sold the movie and/or the DVDs:

a. Amazon;
b. BET Star Cinema;
c. Entertainment One a/k/a eOne Home Video;
d. Apple's Itunes;
e. Netflix;
f. Red Box;
g. Showtime;
h. Target; and
i. Walmart.

Further, Youtube has and shows clips of the movie made of the Protected Work, and IMDb provides information concerning the movie made of the Protected Work.

24. Defendants have not accounted to The Three Wise Men for profits from the sales of the unlicensed and unauthorized *Heaven Ain't Hard to Find* film that was produced and recorded on DVD and distributed as set forth above.

## CAUSES OF ACTION

### Count I – Copyright Infringement under the Copyright Act

25. Plaintiff incorporates and realleges Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

26. Plaintiff has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

27. Defendants were well aware of Plaintiff's ownership of the copyrights in the Protected Work and any derivative works thereof. Nonetheless, Defendants willfully infringed upon Plaintiff's copyright by using the Protected Work and the derivative Play in a manner not authorized by Plaintiff. Defendants have intentionally used the Protected Work to film a movie

for distribution, and/or otherwise exploited or utilized the Protected Work without authorization, in violation of Plaintiff's rights.

28. Defendants are further infringing upon Plaintiff's copyright of the Protected Work by making and causing to be made the movie *Heaven Ain't Hard to Find* using the Protected Work, reproducing copies of the movie on DVD and other home entertainment formats, and selling the movie to the public through DVD, satellite, and other home entertainment options. All of Defendants' actions relating to the Protected Work have been done publically in violation of Plaintiff's exclusive rights.

29. Defendants' acts of infringement are willful, intentional, purposeful, in disregard of, and indifferent to Plaintiff's rights. Defendants have intentionally violated the Copyright Act, hereby entitling Plaintiff to all remedies provided by the Copyright Act.

30. As a direct and proximate result of Defendants' infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to his actual damages, as well as Defendants' profits from infringement, as will be proven at trial pursuant to 17 U.S.C. § 504(b). Plaintiff is further entitled to the maximum statutory damages in the amount of $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for violations committed willfully, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

31. Plaintiff is further entitled to his attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

## Count II - Common Law Fraud

32. Plaintiff incorporates and realleges Paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. Defendants defrauded Plaintiff by making fraudulent and material misrepresentations to Plaintiff and third parties concerning the use of the Protected Work, the status of the Play, and the performance of the Play. These representations were false. At the time Defendants made the representations they knew the representations were false, and they made the representations with the intent that the representations would be acted upon. Defendants' actions and representations proximately caused injury to Plaintiff. Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

34. Plaintiff's injury resulted from Defendants' fraud, malice, or gross negligence, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

35. As a result of Defendants' fraud there should be a constructive trust over all of the monies received by Defendants as a result of selling DVDs based upon the Play.

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

36. Plaintiff incorporates and realleges Paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff great and irreparable injury that cannot be fully compensated for or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting further infringements of his copyright and exclusive rights under copyright.

38. Plaintiff requests that a preliminary and permanent injunction be entered to stop Defendants' intentional and purposeful copyright infringement, and from further use of the Protected Work and all derivative works arising therefrom.

39. All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## PRAYER FOR RELIEF

40. Plaintiff Timothy Javon Johnson, individually and d/b/a The Three Wise Men a/k/a Three Wisemen, asks this Court for:

   a. a preliminary and permanent injunction enjoining Defendants from infringing Plaintiff's copyright in any manner;

   b. judgment for all actual, compensatory and exemplary damages;

   c. all damages authorized under the Copyright Act;

   d. an order for an accounting of all profits and a constructive trust on all profits;

   e. judgment for attorneys' fees and full costs pursuant to 17 U.S.C. § 505;

   f. an order requiring that Defendants deliver up to be impounded during the pendency of this action all copies of the Protected Work and all derivative works (including all written copies, electronic copies, videos, discs, cassettes, writings or other tools used to reproduce the protected work) as in Defendants' possession or under their control;

   g. an order requiring that Defendants deliver up to be impounded or copied at the outset of this action all business, financial, tax or sales records, receipts or documents in Defendants' possession or under their control relating to the creation, acquisition, sales, performances, or distribution of the infringing material or work;

   h. an order requiring that Defendants provide information about all third parties Defendants have reason to believe possess copies of the Protected Work and/or derivative works arising from the Protected Work (including name, address, phone number and when the third party gained access) to allow Plaintiff to take steps to protect his rights in the Protected Work;

   i. all costs of suit and prejudgment and post-judgment interest; and

   j. such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

41. Plaintiff demands a jury trial for all issues so triable.

                                            Respectfully submitted

                                            *s/Kenneth M. Krock*
                                            Kenneth M. Krock
                                            Texas Bar No. 00796908
                                            Federal ID No. 20449
                                            Rapp & Krock, PC
                                            3050 Post Oak Blvd, Suite 400
                                            Houston, Texas 77056
                                            (713) 759-9977 telephone
                                            (713) 759-9967 facsimile
                                            kkrock@rk-lawfirm.com
                                            **ATTORNEY IN CHARGE**
                                            **FOR PLAINTIFF**

<u>Of Counsel:</u>
Terri S. Morgan
Texas Bar No. 08286500
Federal ID No. 10591
RAPP & KROCK, PC
3050 Post Oak Blvd, Suite 400
Houston, Texas 77056
(713) 759-9977 telephone
(713) 759-9967 facsimile
tmorgan@rk-lawfirm.com